# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YVETTE KEYS, <br>                  Plaintiff, <br>      v. <br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br>                  Defendant. | NO. CV 17-2739-KS <br><br> **MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

YVETTE KEYS ("Plaintiff") filed a Complaint on April 10, 2017, seeking review of the denial of her applications for Supplemental Security Income ("SSI") and disability insurance benefits ("DIB"). (Dkt. No. 1.) The parties have consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11-12, 20.) On January 3, 2018, the parties filed a Joint Stipulation. (Dkt. No. 21 ("Joint Stip.").) Plaintiff seeks an order reversing the Commissioner's decision and ordering the payment of benefits or, in the alternative, remanding for further proceedings. (Joint Stip. at 23.) The Commissioner requests that the ALJ's decision be affirmed or, in the alternative,

remanded for further proceedings. (*Id.* at 24.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On February 13, 2014, Plaintiff, who was born on August 2, 1966, filed applications for SSI and DIB. (AR 25, 150-64.) Plaintiff alleged disability commencing on October 16, 2011 due to strokes, diabetes, high blood pressure, and bipolar disorder. (AR 58-59, 73-74.) After the Commissioner denied Plaintiff's applications (AR 72, 87), Plaintiff requested a hearing (AR 99-102). At a hearing held on September 15, 2015, at which Plaintiff appeared with counsel, an Administrative Law Judge ("ALJ") heard testimony from Plaintiff, two medical experts, and a vocational expert ("VE"). (AR 41-57.) On October 14, 2015, the ALJ issued an unfavorable decision denying Plaintiff's applications for SSI and DIB. (AR 25-34.) On February 9, 2017, the Appeals Council denied Plaintiff's request for review. (AR 1-3.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since her October 16, 2011 alleged onset date and that Plaintiff had the following severe impairments: diabetes mellitus, hypertension, history of strokes with left hemiparesis, dysthymia, and cognitive disorder. (AR 27.) The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in the Commissioner's Listing of Impairments. (AR 28-30.) The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) except she was precluded from climbing ladders, ropes or scaffolds; precluded from working at hazards or unprotected heights; and limited to understanding, remembering, and carrying out simple, repetitive tasks. (AR 30.) The ALJ

found that Plaintiff was capable of performing her past relevant work as a cashier and fast food worker. (AR 33.) In the alternative, the ALJ found that Plaintiff was capable of performing other work in the national economy, specifically, the jobs of fund raiser II and survey worker. (AR 34.) Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.*)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation omitted); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

3

2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

## DISCUSSION

Plaintiff alleges the following three errors: (1) the ALJ erred at step four in classifying Plaintiff's past relevant work under the Dictionary of Occupational Titles ("DOT"); (2) the ALJ erred at step five because of conflicts with the DOT; and (3) the ALJ erred in assessing Plaintiff's mental residual functional capacity. (Joint Stip. at 4.) For the reasons discussed below, the Court concludes that these issues do not warrant reversal of the ALJ's decision.

**I.     Past Relevant Work (Issue One)**

In Issue One, Plaintiff contends that the ALJ erred at step four in classifying Plaintiff's past relevant work into two separate occupations, cashier and fast food worker, under the DOT. (Joint Stip. at 5-7, 11.)

**A.     Applicable Law**

At step four of the Commissioner's sequential evaluation process, a claimant has the burden of showing that she can no longer perform her past relevant work. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(e), 416.920(e). An ALJ's determination of whether a claimant is capable of performing her past relevant work

4

may be based on *either* the past relevant work as performed by the claimant *or* the past relevant work as generally performed in the national economy. *See Pinto*, 249 F.3d at 845 ("We have never required explicit findings . . . regarding a claimant's past relevant work both as generally performed *and* as actually performed.") (emphasis in original); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993); *Sanchez v. Sec'y of Health & Human Servs.*, 812 F.2d 509, 511 (9th Cir. 1987).

Sources of information about the requirements of past relevant work as it was actually performed by a claimant may include a properly completed vocational report and the claimant's own testimony. *See Pinto*, 249 F.3d at 845-46; SSR 82-61, 1982 WL 31387, at *2; SSR 82-41, 1982 WL 31389, at *4. The best source of information for how a claimant's past relevant work is generally performed in the national economy is the DOT. *See Pinto*, 249 F.3d at 845; *see also Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995); 20 C.F.R. §§ 404.1566(d), 416.966(d). If an ALJ relies on the testimony of a VE at step four, that testimony must comport with the DOT in order to support the ALJ's "general performance" finding, or if the testimony contradicts the DOT, "the record must contain persuasive evidence to support the deviation." *See Pinto*, 249 F.3d at 845-46 (citation omitted).

### B. Background

Plaintiff testified that she last worked as a cashier at Rally's and Burger King. (AR 45.) The ALJ commented that Plaintiff's testimony about her past work was "less than clear." (AR 50.) However, Plaintiff had earlier completed a written report detailing what she did in those jobs: she "greeted customers," "took food orders," "set up for the start of the business day," "expedited orders," "lifted the sleeves of cups and napkins," and did "cleanup before my shift ended." (AR 218, 219.)

//
//

The vocational expert identified Plaintiff's past relevant work at Rally's and Burger King as two occupations: cashier II (DOT 211.462-010) and fast-food worker (DOT 311.472-010). (AR 51.) The vocational expert also testified that a person with Plaintiff's limitations could perform either occupation, both as it was actually performed and as it is generally performed in the national economy. (*Id.*) The ALJ accepted the vocational expert's testimony to conclude that Plaintiff could perform her past relevant work and therefore was not disabled at step four. (AR 33.)

**C.     Analysis**

As an initial matter, Plaintiff does not appear to be challenging the ALJ's determination that she could perform her past relevant work as she actually performed it. The ALJ's uncontested determination of actual performance would be sufficient to support the step four determination. *See Pinto*, 249 F.3d at 845. In any event, Plaintiff's argument as to general performance is meritless for the following reasons.

Plaintiff contends that the ALJ erred in dividing Plaintiff's past work at Rally's and Burger King into two separate occupations, cashier II and fast-food worker, because Plaintiff's past work at those restaurants were "composite jobs." (Joint Stip. at 6.) Composite jobs are not easily classified into a vocational category because they have "significant elements of two or more occupations and, as such, have no counterpart in the DOT." SSR 82-61, 1982 WL 31387, at *2. Moreover, an ALJ may not classify a composite job according to its "least demanding function" in order to conclude that a claimant can perform her past relevant work. *See Valencia v. Heckler*, 751 F.2d 1082, 1086 (9th Cir. 1985) (holding that a claimant's ability to sort tomatoes did not mean she could perform all the tasks of her past relevant work as an agricultural laborer); *see also Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1166 (9th Cir. 2008) (holding that a claimant's ability to supervise did not mean he could perform his past relevant work as a construction supervisor, which had

required significant manual labor); *Vertigan v. Halter*, 260 F.3d 1044, 1051 (9th Cir. 2001) (holding that a claimant's ability to work as a cashier did not mean she could perform her past relevant work as a pharmacy clerk, which had required more than working as a cashier).

Plaintiff's underlying premise that her work at Rally's and Burger King were "composite jobs" is misplaced. Nothing in the record suggests that her work there was so varied or unusual that it had no single counterpart in the DOT. Rather, the two occupations identified by the vocational expert, cashier II and fast-food worker, appear to have been merely alternative classifications for what Plaintiff did in her past relevant work. In particular, the second occupation identified by the vocational expert, fast-food worker, closely matched the DOT's counterpart for Plaintiff's past relevant work.

The DOT's description of fast-food worker mirrored Plaintiff's own statements about her work. Plaintiff stated, as noted, that she operated as a cashier and also greeted customers, took food orders, set up for the day, expedited orders, lifted cup sleeves and napkins, and cleaned up. (AR 218, 219.) Similarly, the DOT describes the duties of a fast-food worker as serving customers, requesting customers' orders, using a multicounting machine to record the orders and compute the bill, notifying kitchen personnel of shortages and special orders, preparing drinks, receiving payment, and maintaining orderly eating or serving areas. *See* DOT 311.472-010. Nothing in the record suggests that Plaintiff's work at Rally's and Burger King required her to perform any duties that were unique from or more demanding than what the DOT describes for that work. *See Stacy v. Colvin*, 825 F.3d 563, 570 (9th Cir. 2016) (rejecting claimant's label of a composite job where 70 to 75 percent of claimant's time on the job was spent performing duties described by the DOT); *see also Kawelo v. Berryhill*, _ F. App'x_, 2018 WL 2093309, at *2 (9th Cir. May 7, 2018) (rejecting composite job argument where the claimant's past work as a loan officer "was not merely a component" of her past relevant work at a bank, but encompassed a "separate identifiable occupation" that was captured by the DOT classification). Thus the DOT's classification of

7

fast-food worker adequately captured Plaintiff's past relevant work as it is generally performed in the national economy.

The only remaining issue at step four is whether an apparent conflict arose between the DOT descriptions for the jobs identified by the vocational expert and his opinion that a person with Plaintiff's limitations could perform that occupation. *See Pinto*, 249 F.3d at 845-46. The only suggested conflict arose between the jobs' reasoning levels and Plaintiff's limitation to simple, repetitive tasks. As relevant here, an occupation requiring Reasoning Level 2 requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (citation omitted). An occupation requiring Reasoning Level 3 requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." *Id*.

One of the occupations identified by the vocational expert, cashier II, involves cashiering duties that are apparently more complex than those needed at a fast-food restaurant and requires a worker to be capable of Reasoning Level 3. *See* DOT 211.462-010 (duties of a cashier II include, among other things, cashing checks, preparing reports, and issuing refunds or credit memorandums for returned merchandise). As Plaintiff points out (Joint Stip. at 7), a job such as cashier II that requires Reasoning Level 3 raises an apparent conflict with a worker's limitation to simple, repetitive tasks. *See Zavalin*, 778 F.3d at 847-48 (holding that the job of cashier II raised an apparent conflict with the claimant's limitation to simple, repetitive tasks). But the other identified occupation, fast-food worker, requires only Reasoning Level 2. *See* DOT 311.472-010. A job requiring Reasoning Level 2 raises no apparent conflict with a worker's limitation to simple, repetitive tasks. *See Rounds v. Comm'r SSA*, 807 F.3d 996, 1004 n.6 (9th Cir. 2015) (collecting cases including

8

*Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010); *Abrew v. Astrue*, 303 F. App'x 567, 569 (9th Cir. 2008); *Lara v. Astrue*, 305 F. App'x 324, 326 (9th Cir. 2008); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005); and *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004)). Thus, even if Plaintiff is correct that the occupation of cashier II raised an apparent conflict with the DOT, the other occupation of fast-food worker raised no such conflict. Thus, Plaintiff failed to meet her burden of showing that she could no longer perform her past relevant work as a fast-food worker, and the ALJ's step four determination does not warrant reversal.

## II. Other Work In The National Economy (Issue Two)

In Issue Two, Plaintiff contends that the ALJ erred in his alternative determination at step five by identifying the jobs of fund raiser II and survey worker, because both of those jobs raised apparent conflicts with the DOT. (Joint Stip. at 12-13, 16.) Because both jobs require Reasoning Level 3, Plaintiff's contention here is premised on the same apparent conflict under *Zavalin* that she raised for the cashier II occupation. *See* DOT 293.357-014 (fund raiser II requires Reasoning Level 3), DOT 205.367-054 (survey worker requires Reasoning Level 3).

The Commissioner concedes the apparent conflict but argues that the error was harmless under *Zavalin* because the evidence of Plaintiff's background shows she had the requisite reasoning ability to perform jobs requiring Reasoning Level 3. (Joint Stip. at 14-16.) The Court is unpersuaded by that argument because the ALJ did not expressly rely on any of this evidence. *See Zavalin*, 778 F.3d at 848 (declining to find DOT conflict was harmless in light of the evidence of the claimant's mental abilities because "the ALJ did not rely on this evidence, and we cannot do so now to find the error harmless") (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)).

//

In any event, it is unnecessary to resolve this issue because, as discussed above, Plaintiff did not meet her burden at step four of demonstrating that she can no longer perform her past relevant work as a fast-food worker. Thus, this step five issue does not warrant reversal of the ALJ's decision.

### III. Mental Residual Functional Capacity (Issue Three)

In Issue Three, Plaintiff contends that the ALJ erred in assessing Plaintiff's mental residual functional capacity by failing to account for the opinion of Dr. Therese Harris, a non-examining, state agency physician. (Joint Stip. at 17-20, 23.)

#### A. Applicable Law

A claimant's RFC represents the most a claimant can do despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998). An ALJ's RFC determination "must set out *all* the limitations and restrictions of the particular claimant." *Valentine v. Comm'r SSA*, 574 F.3d 685, 690 (9th Cir. 2009) (emphasis in original) (citation omitted).

The Commissioner will assess a claimant's residual functional capacity "based on all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8P, 1996 WL 374184, at *7. "The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citation omitted).

//

10

### B. Background

The ALJ determined in pertinent part that Plaintiff had an RFC for medium work with a limitation to "understand, remember and carry out simple, repetitive tasks." (AR 30.) The ALJ's limitation of Plaintiff to simple, repetitive tasks was based on the testimony of a medical expert, Dr. Kivowitz, who in turn based his assessment on the opinion of an examining psychologist, Dr. Talei. (AR 49, 402-05.)

Dr. Talei's opinion was the single piece of psychiatric evidence in the record based on an examination of Plaintiff. (AR 49.) Upon examination, Dr. Talei diagnosed Plaintiff with a dysthymic disorder, cognitive disorder not otherwise specific, polysubstance abuse in sustained and full remission, and borderline intellectual functioning. (AR 405.) From this assessment, Dr. Talei concluded in pertinent part that Plaintiff "would be able to understand, remember and carry out short, simplistic instructions without difficulty" and make "simplistic work-related decisions without special supervision." (AR 406.)

Two non-examining physicians reviewed Dr. Talei's opinion. Dr. Kivowitz, the medical expert, testified that based on Dr. Talei's examination, Plaintiff was limited to simple, repetitive tasks. (AR 49.) Dr. Harris, the state agency physician, gave "little weight" to Dr. Talei's diagnosis of borderline intellectual functioning (AR 64), but otherwise stated that Plaintiff was able "to understand and remember *very short* and simple instructions to adequately perform unskilled work." (AR 69) (emphasis added). Dr. Harris was the only physician in the record to use the modifier "very short."

The ALJ explained the weight he accorded to the medical opinion evidence without identifying any particular physician by name. (AR 32.) The ALJ assigned the "greatest weight" to the opinions of the medical experts, which included Dr. Kivowitz, because they were "consistent with the overall record and the claimant's demonstrated ability to function."

(AR 32.) The ALJ stated that "[w]eight is also given" to the opinions of the examining physicians, which included Dr. Talei, to the extent they were consistent with the RFC determination. (*Id*.) Finally, the ALJ gave "less weight" to the opinions of the state agency physicians, which included Dr. Harris, because they "did not examine the claimant." (*Id*.) Accordingly, the ALJ determined that Plaintiff's RFC included a limitation to simple, repetitive tasks. (AR 30.)

**C.  Analysis**

Plaintiff contends that the ALJ erred in limiting her to simple, repetitive tasks without properly considering Dr. Harris's opinion that Plaintiff should be limited to "very short and simple instructions." (Joint Stip. at 19-20.) The Court rejects this argument for the following reasons.

Plaintiff's contention that the ALJ ignored Dr. Harris's opinion without explanation (Joint Stip. at 19) is contradicted by the ALJ's explicit determination to accord "less weight" to the opinions of the state agency physicians. (AR 32.) Although the ALJ did not identify Dr. Harris by name, it is obvious that the ALJ's overall reference to the state agency physicians included Dr. Harris.

Moreover, the ALJ's stated reason to accord less weight to Dr. Harris's opinion— because she did not examine Plaintiff—was legally sufficient. *See Sousa*, 143 F.3d at 1244. It is well-settled that the opinions of non-examining physicians generally are entitled to the least amount of weight as a medical source opinion in the Commissioner's disability determination. *See Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). Although Plaintiff contends that such a reason to reject Dr. Harris's opinion (the failure to examine Plaintiff) should have applied equally to Dr. Kivowitz (Joint Stip. at 23), the ALJ clearly explained why the non-examining physicians should not be treated the same. According to the ALJ,

the opinions of the medical experts, including Dr. Kivowitz, were entitled to the greatest weight because they were consistent with the overall record and Plaintiff's demonstrated ability to function (AR 32); in other words, Dr. Kivowitz's testimony was consistent with the opinion of the examining physician, Dr. Talei, about Plaintiff's ability to function. In contrast, Dr. Harris's statement that Plaintiff should be limited to "very short and simple instructions" was not supported by the opinion of Dr. Talei or any other medical opinion in the record. Thus, Dr. Harris's opinion by itself could not have been substantial evidence. *See Lester*, 81 F.3d at 831 (noting that the opinion of a non-examining physician "with nothing more" cannot constitute substantial evidence). It follows that the ALJ had a permissible basis to treat the non-examining physicians' opinions differently.

Finally, even if the ALJ had completely failed to discuss Dr. Harris's opinion, it would not have been reversible error. Although an ALJ generally must analyze and discuss all the medical opinion evidence from the record, it is not reversible error to overlook evidence, even medical opinion evidence, when it is not significant and probative. *See Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (finding no error from ALJ's failure to discuss treating psychiatrist's opinion that was not significant and probative). In particular, an ALJ is "not obliged to explicitly detail his reasons" for implicitly rejecting the opinion of a non-examining physician when "[n]o other doctor concurred" with that opinion. *See Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985) (finding no error from the ALJ's failure to discuss a psychologist's report describing limitations with which no other doctor concurred); *see also Smith v. Berryhill*, 2017 WL 5158633, at *2 (C.D. Cal. Nov. 6, 2017) ("The Ninth Circuit has stated that an ALJ need not explicitly detail his or her reasons for rejecting the contradicted opinion of a non-treating physician."). Because no other doctor concurred with Dr. Harris's statement that Plaintiff should be limited to "very short" instructions, the ALJ was not obliged to explicitly detail why he did not adopt that limitation.

//

//

13

In sum, the ALJ sufficiently explained why he did not accept Dr. Harris's opinion, particularly the limitation of Plaintiff to "very short" instructions, even though the ALJ was not required to explicitly do so. Accordingly, Plaintiff has not demonstrated that the ALJ's residual functional capacity determination was unsupported by substantial evidence or based on legal error.

**CONCLUSION**

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: May 31, 2018

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE